UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 1:18-cr-190 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| JOSHUA GRIFFIN | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| | ) | |

## MEMORANDUM AND ORDER

Before the Court are Defendant Joshua Griffin's motions to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161, and for violation of his Sixth Amendment right to a speedy trial. (Docs. 80, 83, 84.) For the following reasons, Defendant's motions to dismiss will be **GRANTED** for violation of the Speedy Trial Act. Defendant's motions to dismiss will be **DENIED** to the extent he seeks dismissal with prejudice for violation of the Speedy Trial Act or for violation of his rights under the Sixth Amendment to the United States Constitution.

I. **BACKGROUND**

On December 17, 2018, a grand jury returned an indictment, charging Defendant with: (1) possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) possession of marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 1.) On January 7, 2019, Defendant made his initial appearance. (*See* Doc. 10.) After his initial appearance, United States Magistrate Judge Christopher Steger entered a discovery and scheduling order, which initially set Defendant's trial

for March 4, 2019. (Doc. 11.) On February 13, 2019, Defendant moved to continue his trial date (Doc. 13), and the Court granted his motion pursuant to an "Ends of Justice" order under 18 U.S.C. § 3161(h)(7) (Doc. 14).

After the Court granted two motions to extend the motions deadline (Docs. 16, 18), Defendant filed a motion to suppress (Doc. 19), which United States District Court Judge Harry S. Mattice, Jr. referred to Magistrate Judge Steger (Doc. 20). Judge Mattice also entered an ends-of-justice continuance order, continuing Defendant's trial until after the Court ruled on Defendant's motion to suppress. (Doc. 21.)

On April 22, 2019, Defendant's counsel moved to withdraw her representation of Defendant, citing an irreconcilable conflict and a breakdown in the attorney-client relationship. (Doc. 23.) Magistrate Judge Steger granted the motion to withdraw and appointed substitute counsel on April 25, 2019. (Doc. 28.) On June 20, 2019, Defendant's new counsel moved to withdraw the previously filed motion to suppress. (Doc. 31.) Judge Mattice granted Defendant's motion to withdraw his motion to suppress and reset Defendant's trial date for August 12, 2019. (Docs. 32, 33.) However, on July 23, 2019, Defendant's new counsel filed another motion to suppress (Doc. 34), which Judge Mattice again referred to Magistrate Judge Steger (Doc. 36). Judge Mattice also entered another ends-of-justice continuance order, continuing Defendant's trial until after the Court ruled on Defendant's motion to suppress. (Doc. 37.)

On October 8, 2019, Defendant filed a motion to appoint new counsel (Doc. 44), and, on October 11, 2019, Defendant's counsel filed a motion to withdraw, citing irreconcilable differences (Doc. 45). On October 25, 2019, Magistrate Judge Steger granted Defendant's motion to appoint new counsel and his counsel's motion to withdraw. (Docs. 49, 50.)

On December 12, 2019, Magistrate Judge Steger held an evidentiary hearing on Defendant's motion to suppress (Doc. 52), and, on December 16, 2019, entered his report and recommendation, recommending that the Court deny Defendant's motion to suppress (Doc. 54).

On January 16, 2020, Defendant's counsel filed a motion to withdraw, asserting that the attorney-client relationship had deteriorated to the point that he could no longer provide effective counsel.[1] (Doc. 57.) On February 5, 2020, Magistrate Judge Steger granted the motion to withdraw and appointed Defendant new counsel. (Doc. 61.) In his order, Magistrate Judge Steger ordered Defendant's new counsel to file objections to his report and recommendation on Defendant's motion to suppress on or before March 5, 2020. (*Id*. at 2.)

On March 5, 2020, Defendant's counsel filed a notice, stating that Defendant did not have any objections to Magistrate Judge Steger's report and recommendation. (Doc. 62.) As a result, on March 6, 2020, the undersigned adopted the report and recommendation and denied Defendant's motion to suppress. (Doc. 64.) In a separate order, the Court also reset Defendant's trial for April 27, 2020. (Doc. 65.) That same day, however, Defendant filed a motion to dismiss the indictment for violation of the Speedy Trial Act and for violation of his Sixth Amendment right to a speedy trial. (Doc. 66.) On April 1, 2020, the Court denied Defendant's first motion to dismiss. (Doc. 68.)

On April 17, 2020, the Court continued Defendant's trial, consistent with Standing Order 20-11, which extended suspension of criminal jury trials in the Eastern District of Tennessee based on the COVID-19 pandemic. (Doc. 75.) On May 29, 2020, then Chief Judge Pamela Reeves entered Standing Order 20-13, which stated that "limited criminal and civil jury trials may resume after June 14, 2020, in the Court's discretion." Given concerns about safety in light

---

[1] On January 22, 2020, this case was reassigned to the undersigned. (Doc. 58.)

of the global COVID-19 pandemic, the undersigned exercised his discretion and elected not to reset Defendant's trial date.  On September 3, 2020 and September 25, 2020, Defendant filed motions to dismiss, arguing that he is entitled to dismissal of the indictment against him for violation of the Speedy Trial Act and for violation of his rights under the Sixth Amendment to the United States Constitution.  (Docs. 80, 83, 84.)  The Government has responded, conceding that dismissal is appropriate based on violation of the Speedy Trial Act.  (*See* Doc. 90.)  The Government, however, argues that the Court should dismiss the indictment without prejudice.  (*See id*.)  Defendant's motions to dismiss are now ripe for the Court's review.

## II.     ANALYSIS

### A.  Speedy Trial Act

Subject to certain exceptions, the Speedy Trial Act generally requires a defendant's trial to commence within seventy days "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  However, delay resulting from a pretrial motion, "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded in computing the time within which trial must commence.  18 U.S.C. § 3161(h)(1)(D).  The Speedy Trial Act further provides that "[a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel" does not count "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).

In this case, Defendant made his initial appearance on January 7, 2019.  (Doc. 10.)  Defendant filed a motion to continue the deadlines in his case, which the Court granted in an

order under 18 U.S.C. § 3161(h)(7) on February 13, 2019. (Doc. 14.) At that time, approximately thirty-eight days had run under the Speedy Trial Act. All of the time that elapsed after February 13, 2019, until the Court resolved Defendant's first motion to dismiss on April 1, 2020, is excludable under 18 U.S.C. § 3161(h)(1)(D) as delay resulting from pretrial motions filed by Defendant and ends-of-justice continuances.

After resolving Defendant's first motion to dismiss, the Court continued his trial, consistent with Standing Order 20-11, which extended suspension of criminal jury trials in the Eastern District of Tennessee based on the COVID-19 pandemic. (Doc. 75.) On May 29, 2020, then Chief Judge Pamela Reeves entered Standing Order 20-13, which stated that "limited criminal and civil jury trials may resume after June 14, 2020, in the Court's discretion." At this point, the Court could have theoretically reset Defendant's trial. In reality, however, the global COVID-19 pandemic has made safely conducting criminal jury trials at best impractical, and, at worst, impossible. Finding that it could not ensure a reasonable degree of safety for all participants in a jury trial, including Defendant, court employees, attorneys, witnesses, and jurors, the Court exercised its discretion and elected not to reset Defendant's trial.[2] As a result, the time between June 14, 2020, and the date of this Order is arguably excludable because the Court still cannot reasonably ensure the safety of all participants in a jury trial and the ends of justice outweigh the interests of the public and Defendant in a speedier trial. *See* 18 U.S.C. § 3161(h)(7)(A). Nonetheless, the Government concedes that "it is likely a Speedy Trial Act violation occurred because, in theory . . . jury trials could have commenced on June 14, 2020."

---

[2] The novel coronavirus spreads from person to person through respiratory droplets when individuals are in close proximity, an unavoidable circumstance in a court proceeding. There is currently no vaccine, and infection can lead to serious illness, hospitalization, and/or death of even healthy individuals.

(Doc. 90, at 6.) Accordingly, the Court will **GRANT** Defendant's motions to dismiss for violation of the Speedy Trial Act and will dismiss the indictment against Defendant.

Having determined that dismissal of the indictment is appropriate, the Court must now determine whether to dismiss the case with or without prejudice for violation of the Speedy Trial Act. "[I]f a meritorious and timely motion to dismiss [based on a Speedy Trial Act violation] is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice." *Zedner v. United States*, 547 U.S. 489, 499 (2006). To make this determination, the Court considers the following factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2); *see United States v. Turner*, 602 F.3d 778, 786 (6th Cir. 2010). The Court must balance these factors, and there is no presumption regarding whether dismissal should be with or without prejudice. *United States v. Gross*, 432 F. App'x 490, 493 (6th Cir. 2011).

### i. Seriousness of the Offense

Defendant is charged with (1) possession of a firearm as a convicted felon; (2) possession of marijuana with the intent to distribute; and (3) possession of a firearm in furtherance of a drug-trafficking crime. (Doc. 1.) The parties agree that these offenses are serious. (Doc. 90, at 7–8; Doc. 91, at 3.) Further, in the Sixth Circuit, drug offenses are categorically labeled as serious. *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000); *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community.") Additionally, Defendant is charged with possessing a firearm in connection with drug trafficking. Accordingly, the seriousness of the offenses favors dismissal without prejudice.

### ii. Facts and Circumstances of the Case

In evaluating the facts and circumstances surrounding delay, courts consider whether the delays were caused by bad faith, prosecutorial misconduct, or a pattern of negligence on the part of the Government. *See United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004). "[A]dequately consider[ing]" this factor requires "a proper evaluation of the roles each party and the court played in causing the delay[.]" *Moss*, 217 F.3d at 431.

The Court finds that the facts and circumstances of this case support dismissal without prejudice. There are two main factors that contributed to the delays in this case. First, Defendant filed numerous motions, including: (1) a motion to suppress that he eventually withdrew (*see* Docs. 19, 31); (2) multiple motions to withdraw representation and motions for new counsel (Docs. 23, 44, 45, 57); and (3) a second motion to suppress, which Defendant's counsel did not object to after Magistrate Judge Steger recommended denying the motion (*see* Docs. 34, 54, 62). Litigating Defendant's motions took over a year and was not the Government's fault. The second factor contributing to delay in this case is the COVID-19 pandemic. As the Court previously explained, the pandemic has made conducting criminal jury trials almost impossible because the Court remains unconvinced that it can ensure a reasonable degree of safety for all participants in a jury trial. The pandemic and related complications are not anyone's fault.

The Court notes, however, that the Government has been somewhat lacking in timely responding to Defendant's recently filed motions. On April 6, 2020, Defendant filed several motions in limine. (Docs. 69–74.) The Government did not respond to Defendant's motions in limine, and, on May 21, 2020, Defendant moved to deem the Government's failure to respond as a waiver of opposition to his motions. (Doc. 76.) To date, the Government has not responded to

Defendant's motions in limine or his motion to deem its failure to respond as waiver of opposition to those motions. Additionally, on August 10, 2020, Defendant filed a second motion to dismiss for violation of the Speedy Trial Act (Doc. 80), and, on September 25, 2020, Defendant filed a third motion to dismiss (Doc. 83). The Government did not respond to Defendant's motions to dismiss until the Court convened a status conference and ordered it to respond. (*See* Docs. 85, 87.) Local Rule 7.1(a) provides that parties have twenty-one days to respond to dispositive motions and fourteen days to respond to all other motions. Local Rule 7.2 further provides that "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." The Government has not timely responded to Defendant's motions as required by local rule. Nonetheless, the Government's failure to timely respond to Defendant's motions does not compel dismissal with prejudice given Defendant's motions practice in this case and the complications arising from a global pandemic.[3]

### iii. Impact of Reprosecution

Finally, the impact of a reprosecution on the administration of justice requires courts to consider "whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Gross*, 432 F. App'x at 494 (internal quotation marks and citation omitted); *see also United States v. Kottmyer*, 961 F.2d 569, 573 (6th Cir. 1992). However, "[t]he longer the

---

[3] Defendant cites *United States v. Balleza*, 420 F. Supp. 3d 713 (E.D. Tenn. 2019), in support of his argument for dismissal with prejudice. (Doc. 91, at 6–7.) In *Balleza*, the Court granted a defendant's motion to dismiss after the Government failed to respond. 420 F.3d at 715. In that case, however, the defendant's motion to dismiss was predicated, in part, on the fact that Immigration and Customs Enforcement had initiated removal proceedings against the defendant, thereby making him unavailable for his trial. *Id*. at 713–14. Those facts make *Balleza* distinguishable from the present case such that it does not compel dismissal with prejudice based on the Government's failure to respond to Defendant's motions.

delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *United States v. Taylor*, 487 U.S. 326, 340 (1988); *Moss*, 217 F.3d at 432 (explaining that the district court should have considered the defendant's "incarceration and its impact on his life circumstances").

In this case, although there has been a significant delay, Defendant has not identified any particularized prejudice, other than the length of the delay itself, that he will suffer from reprosecution. For example, Defendant does not claim that "that any of [Defendant's] witnesses died or otherwise became unavailable owing to the delay." *Barker v. Wingo*, 407 U.S. 514, 534 (1972). Additionally, Defendant does not argue that the Government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Speedy Trial Act. To be sure, Defendant's liberty has been restricted while in custody, and, while the length of the delay in this case may weigh slightly in favor of dismissal with prejudice, the other factors weigh more heavily in favor of dismissal without prejudice, especially because a significant portion of the delay is attributable to Defendant's motions practice and a global pandemic. Accordingly, based on consideration of the factors set forth in § 3162(a)(2), the Court will dismiss the indictment against Defendant without prejudice based on violation of the Speedy Trial Act.

### B. Sixth Amendment

Defendant also argues that the Government has violated his Sixth Amendment right to a speedy trial. (Doc. 80, at 1; Doc. 83, at 1.) The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Unlike a violation of the Speedy Trial Act, a dismissal for a speedy-trial violation under the Sixth Amendment must be with prejudice. *See United States v. Sutton*, 862 F.3d 547, 554 (6th Cir. 2017). To determine whether there has been a Sixth Amendment violation, the

9
Case 1:18-cr-00190-TRM-CHS   Document 93   Filed 10/28/20   Page 9 of 12   PageID #: 275

Court must balance four factors: "(1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result." *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)) (internal quotation marks omitted).

"The first factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003)). The "delay" at issue under the Sixth Amendment is the "the delay that ensued between indictment and trial." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). Any delay that approaches one year is so "uncommonly long" that it is presumptively prejudicial. *Id.* (citation omitted); *Schreane*, 331 F.3d at 553. In this case, Defendant was indicted on December 17, 2018, and has not yet proceeded to trial. Accordingly, the delay in this case is presumptively prejudicial.

The reasons for the delay in this case, however, militate against finding a Sixth Amendment violation. This factor is primarily concerned with whether the Government or the criminal defendant "is more to blame" for the delay. *Doggett*, 505 U.S. at 651. Here, there is no allegation that the Government acted in bad faith or was motivated by gamesmanship; rather, the procedural history demonstrates that delays in this case are primarily a result of Defendant's motions practice, which included multiple motions to suppress and multiple motions for new counsel. "When a party makes motions, it cannot use the delay caused by those motions as a basis for a speedy-trial claim" under the Sixth Amendment. *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011). Moreover, delay from April 2020 to present is the direct result of the

10
Case 1:18-cr-00190-TRM-CHS   Document 93   Filed 10/28/20   Page 10 of 12   PageID #: 276

global COVID-19 pandemic.  Accordingly, this factor militates against finding that there has been a Sixth Amendment violation.

Third, the Court examines whether and how Defendant has asserted his speedy-trial right.  Here, Defendant has asserted his speedy-trial right, and this assertion is typically "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32.  Defendant's assertion, however, "must be viewed in the light of [Defendant's] other conduct."  *United States v. Loud Hawk*, 474 U.S. 302, 314–15 (1986).  Over a year of Defendant's time in pre-trial custody is the result of his own pre-trial choices—namely, his decisions to seek appointment of new counsel on multiple occasions and his filing of two motions to suppress, the first of which was withdrawn.  Delays in this case have been chiefly associated with, and have occurred as a result of, actions necessary to fully litigate issues Defendant raised.  While Defendant has more recently pressed his speedy-trial right, "[v]iewed as a whole, [Defendant's] track record does not evince a strong or consistent concern with his Sixth Amendment rights."  *United States v. Baugh*, 605 F. App'x 488, 492 (6th Cir. 2015).  Thus, at best, this factor is neutral.

Finally, the Court considers prejudice to the defendant caused by the delay.  The Supreme Court has explained that courts must assess prejudice in light of the specific interests of defendants that "the speedy trial right was designed to protect":  (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.  The third interest carries the most weight "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id.*  In the Sixth Circuit, when the Government prosecutes a case "with reasonable diligence, a defendant who cannot demonstrate how his

defense was prejudiced *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay." *Young*, 657 F.3d at 418 (quoting *United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000) (emphasis in original)). Moreover, the "specific prejudice must be 'substantial prejudice' for a defendant to prevail on a speedy-trial claim." *Id.* Defendant has offered no evidence of specific prejudice, such as the death of witnesses, loss of records, or other barriers to trial preparation resulting from the delay. (*See generally* Docs. 80, 83, 84.) Accordingly, Defendant has not shown he has suffered substantial prejudice resulting from the delay.

Although the delay between Defendant's indictment and any trial exceeds one and a half years, a balancing of all four factors establishes that the delay in this case is not a Sixth Amendment violation. *See, e.g.*, *United States v. Bass*, 460 F.3d 830, 837–38 (6th Cir. 2006) ("Although the delay of six years was presumptively prejudicial, . . . 'presumptive prejudice cannot alone carry a Sixth Amendment claim,' but rather must be considered in the context of the other factors, particularly the reason for the delay."). Defendant was, therefore, not deprived of his right to a speedy trial under the Sixth Amendment.

### III. CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss the indictment for violation of the Speedy Trial Act (Docs. 80, 83, 84) are **GRANTED**. The Court **DISMISSES** the indictment **WITHOUT PREJUDICE**.

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**